FILED

2009 DEC -4  PM 4: 37

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| COPSYNC, INC., <br> RUSSELL CHANEY, individually, and <br> JASON S. RAPP, individually, <br><br> Plaintiffs, <br><br> v. <br><br> TIMOTHY T. PAGE, individually, <br> TESTRE LP, <br> GRIFFDOM ENTERPRISES, INC., <br> CHELSEA PLACE INVESTMENTS, INC., <br> SWEETSUN INTERTRADE, INC., <br> JULES DEVELOPMENT, INC., <br> SILAU HOLDINGS LTD., <br> VERONA FUNDS LLC, <br> ULA TECH CONSULTING, INC., <br> NEOSTOX CORP., and <br> BEAUX BEAUX PARTNERSHIP <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § | Civil Action No. A09CA 871 SS <br><br> **JURY TRIAL DEMANDED** |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

COPsync, Inc. (formerly known as PostInk Technology LP and Global Advance Corp.), Russell Chaney, and Jason S. Rapp (collectively, "Plaintiffs") file this Original Complaint against Timothy T. Page, Testre LP, Griffdom Enterprises, Inc., Chelsea Place Investments, Inc., Sweetsun Intertrade, Inc., Jules Development, Inc., Silau Holdings Ltd., Verona Funds LLC, ULA Tech Consulting, Inc., Neostox Corp., and Beaux Beaux Partnership (collectively, "Defendants"), and would respectfully show the Court as follows.

1

## I.    NATURE OF THIS ACTION

1.    Plaintiffs bring this action against Defendants to recover damages and other relief for federal securities law violations, breach of fiduciary duty, fraud, conversion, breach of contract, and other common law violations in connection with Defendants' role in wrongfully trading securities, and promoting and raising capital for COPsync, Inc. ("COPsync") in a "going public" transaction.  In the year and a half following the transaction, and under the specific auspices of Timothy Page's fiduciary relationship with COPsync, Defendants fraudulently procured millions of shares of COPsync stock and bilked COPsync out of several millions of dollars of capital that was earmarked for and should have been remitted to COPsync.  As set forth herein, Defendants' conduct has caused Plaintiffs to suffer extensive damages and ongoing, irreparable harm that warrants injunctive relief.

## II.    PARTIES

### A.    Plaintiffs

2.    Plaintiff, COPsync, Inc., is a corporation that is organized under the laws of the State of Delaware.  COPsync has its principal place of business in the State of Texas, which is located at 2010 FM 2673, Canyon Lake, Texas 78133.

3.    Plaintiff, Russell Chaney ("Chaney"), is a resident of the State of Texas.  Chaney brings this suit individually in his capacity as a shareholder of COPsync.

4.    Plaintiff, Jason S. Rapp ("Rapp"), is a resident of the State of Texas.  Rapp is brings this suit individually in his capacity as a shareholder of COPsync.

**B.    Defendants**

5.    Defendant, Timothy T. Page ("Page"), an individual and citizen of the State of California, may be served with process at 31107 Bailard Road, Malibu, California 90265.

6.    Defendant, Testre LP ("Testre"), is a limited partnership that is organized under the laws of the State of Texas.  Upon information and belief, Testre maintains its principal place of business in the State of California.  Testre may be served with process through its registered agent in Texas, Martin Cantu, at 9211 Waterford Centre Blvd., Suite 200, Austin, Texas 78758.

7.    Defendant, Griffdom Enterprises, Inc. ("Griffdom"), is a corporation that is incorporated under the laws of the State of Texas.  Upon information and belief, Griffdom maintains its principal place of business in the State of California.  Griffdom may be served with process through its registered agent in Texas, Martin Cantu, at 9211 Waterford Centre Blvd., Suite 200, Austin, Texas 78758.

8.    Defendant, Chelsea Place Investments, Inc. ("Chelsea Place"), is a corporation that is incorporated under the laws of the State of Texas.  Upon information and belief, Chelsea Place maintains its principal place of business in the State of California.  Chelsea Place may be served with process through its registered agent in Texas, Martin Cantu, at 9211 Waterford Centre Blvd., Suite 200, Austin, Texas 78758.

9.    Defendant, Sweetsun Intertrade, Inc. ("Sweetsun"), is a company that is organized under the laws of Belize.  Upon information and belief, Sweetsun maintains its principal place of business in the State of California.  Sweetsun may be served with process pursuant to Texas Civil

Practice & Remedies Code § 17.043 through its principal and director, Timothy Page, at 31107 Bailard Road, Malibu, California 90265.

10.     Defendant, Jules Development, Inc. ("Jules Development"), is a corporation that, upon information and belief, maintains its principal place of business in the State of California. Jules Development may be served with process pursuant to Texas Civil Practice & Remedies Code § 17.043 through its principal and director, Timothy Page, at 31107 Bailard Road, Malibu, California 90265.

11.     Defendant, Silau Holdings, Ltd. ("Silau"), is a limited company that, upon information and belief, maintains its principal place of business in the State of California.  Silau may be served with process pursuant to Texas Civil Practice & Remedies Code § 17.043 through its principal and director, Timothy Page, at 31107 Bailard Road, Malibu, California 90265.

12.     Defendant, Verona Funds, LLC ("Verona"), is a limited liability company that, upon information and belief, maintains its principal place of business in the State of California. Verona may be served with process pursuant to Texas Civil Practice & Remedies Code § 17.043 through its principal and manager, Timothy Page, at 31107 Bailard Road, Malibu, California 90265.

13.     Defendant, ULA Tech Consulting, Inc. ("ULA Tech"), is a corporation that, upon information and belief, maintains its principal place of business in the State of California.  ULA Tech may be served with process pursuant to Texas Civil Practice & Remedies Code § 17.043 through its de facto principal, Timothy Page, at 31107 Bailard Road, Malibu, California 90265.

14.    Defendant, Neostox Corp. ("Neostox"), is a corporation that is incorporated under the laws of the State of Florida.  Upon information and belief, Neostox maintains its principal place of business in the State of California.  Neostox may be served with process pursuant to Texas Civil Practice & Remedies Code § 17.043 through its vice president, Timothy Page, at 31107 Bailard Road, Malibu, California 90265.

15.    Beaux Beaux Partnership ("Beaux Beaux"), upon information and belief, is a Louisiana partnership with its principal place of business located in Bellaire, Texas.  Beaux Beaux may be served with process pursuant to Texas Civil Practice & Remedies Code §17.043 through the president of its general partner, Bobby Perry, at 4901 Bellaire Blvd., Bellaire, Texas 77401.

16.    Defendants Testre, Griffdom, Chelsea Place, Sweetsun, Jules, Silau, Verona, ULA Tech, Neostox, and Beaux Beaux are collectively referred to herein as the "Page Entities".

### III.    JURISDICTION

17.    This Court has exclusive subject matter jurisdiction pursuant to 15 U.S.C. §78aa based upon Plaintiffs' claim for violations of Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act").  15 U.S.C. §78p(b).  This Court has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. §1367.

### IV.    PERSONAL JURISDICTION & VENUE

18.    Personal jurisdiction is appropriate in this District because the Defendants are either Texas residents, committed or conspired to commit the acts complained of herein in Texas, or committed acts outside of Texas that had reasonably foreseeable consequences in Texas.  On

information and belief, the Page Entities conduct substantial business activities and maintain significant contacts in the Western District of Texas.

19.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) & (b)(2), in that, on information and belief, multiple Defendants reside in the Western District of Texas and a substantial part of the events or omissions giving rise to this claim occurred in this district.

## V.    FACTUAL BACKGROUND

### A.    COPsync's Formation and Rapid Success

20.     Chaney and Rapp founded COPsync (then PostInk Technology, LP ("PostInk")) in April 2004 to fill a large void in law enforcement technology—the inability to share information and intelligence among law enforcement agencies in real time.  To that end, COPsync developed a proprietary universal mobile data collection user interface that standardizes information collection, while concurrently providing real-time information sharing.  PostInk's founders included Chaney and Rapp.

21.     Having developed the first and only integrated software product (COPsync™) that provides a  real-time, nationwide information sharing network for law enforcement officers, PostInk was well positioned to obtain a significant share of a large, but untapped, market.  In fact, PostInk quickly developed strong interest in its product among law enforcement agencies across the State of Texas.

22.     PostInk, however, lacked a public listing that would provide it with efficient access to capital in the U.S. and abroad—capital that PostInk needed to fully market and develop

COPsync™.  As a result, in or around early 2007, PostInk began evaluating whether a merger with a public company could satisfy its listing needs and thereby enhance its growth prospects.

23.     In November 2007, Page, who represented himself as an expert in taking small, private companies public, approached Chaney and Rapp.  Page offered to guide PostInk and its investors through the process of becoming a public company, to invest substantial sums of money into the merged company (COPsync), and to assume the role of a promoter to form and raise capital for COPsync from investors worldwide.

24.     Inexperienced in these areas, Chaney and Rapp hired Page and relied on Page's guidance and advice at every stage in the process.  Page repeatedly assured Chaney and Rapp that he would act as their promoter, advisor, and fiduciary, and instructed them not to take any action without consulting him.  Through Chaney and Rapp, and with Page's full knowledge, COPsync and its investors reposed great trust and confidence in Page.

**B.     PostInk Goes Public**

25.     In order to become a public company, Page proposed that PostInk merge into a public, fully reporting shell entity that Page proposed to purchase (also known as a "reverse merger" transaction).  Relying on Page and under his guidance—and after obtaining the approval of PostInk's limited partners—Chaney and Rapp agreed to move forward with Page's stated plan.

26.     Shortly thereafter, Page located a public shell company, Global Advance Corporation ("GADV"), to effectuate the reverse merger.  Acting as COPsync's promoter, and on information and belief, Page then purchased all of GADV's stock for a total price of $750,000.00.  Pursuant to various share purchase agreements dated November 6, 2007, Page dispersed the

purchased GADV shares among various entities controlled by Page, including a majority of the Page Entities.

27.     Despite owning all GADV stock, and unbeknownst to Chaney and Rapp, Page caused GADV to enter into a loan agreement with Testre—an entity wholly controlled by Page— on or around November 2, 2007.  Pursuant to that loan agreement, GADV agreed to repay Testre, with interest, the $750,000 used to purchase the GADV stock, which could be converted into an additional 15 million shares of GADV stock upon the completion of a merger between GADV and PostInk.  GADV, however, received no consideration for its commitment to repay Testre.

28.     After several weeks of negotiations, PostInk and GADV executed an acquisition agreement dated February 5, 2008 (the "Acquisition Agreement"), to consummate the merger and form COPsync.   Pursuant to the Acquisition Agreement's terms, GADV would cancel approximately 29,388,750 shares of outstanding stock (the "Cancelled Stock"), leaving 40,986,255 shares of GADV stock to be issued to Page and PostInk's partners.

29.     Of those remaining shares, PostInk's partners received approximately 25 million shares of restricted COPsync stock in exchange for their ownership interest in PostInk.   In conjunction with the Page Entities, Page received (i) 15 million warrants for restricted COPsync stock at a conversion rate of $0.05 per share as compensation for purchasing GADV; (ii) a convertible loan in the amount of $750,000.00 as alleged repayment of the fraudulent loan

agreement between GADV and Testre;[1] and (iii) 15 million **unrestricted** shares of COPsync stock (the "Unrestricted Stock").[2]  Page was the **only** party who received unrestricted COPsync stock.

30.     Although Chaney and Rapp were hesitant about issuing the Unrestricted Stock, Page informed Chaney and Rapp that the Unrestricted Stock was vital to his capital raising efforts, and Page agreed that the Unrestricted Stock would be sold only if necessary and for the sole purpose of raising capital for COPsync, and that all proceeds from any sales of the Unrestricted Stock would be paid to COPsync.  These terms were documented in email communications and reiterated at several meetings between the parties.

31.     In fact, in a meeting in Zurich, Switzerland on November 27, 2007, Page told Chaney and Rapp that the Unrestricted Stock was for the express purpose of allowing him to raise capital from European hedge funds.   And, to ensure that the Unrestricted Stock would not be traded on the open market to the detriment of COPsync's other shareholders, Page further assured Chaney and Rapp that he would obtain lock-up agreements from all such purchasers.   Although Page noted that the Unrestricted Stock could be sold in the open market to raise capital as a last resort, he repeatedly emphasized and agreed that all proceeds from such sales would be paid to COPsync.

32.     Chaney and Rapp, on COPsync's behalf, agreed to issue the Unrestricted Stock to Page with the understanding that all proceeds would be paid to COPsync.  The parties agreed that

---

[1]       Page also obtained an additional 8,920,000 shares issuable upon exercise of various convertible notes dated January 21, 2008, February 13, 2008, March 13, 2008, May 25, 2008, June 25, 2008, July 12, 2008, July 14, 2008, and July 14, 2009 (the "Convertible Notes").  The Convertible Notes provide that Testre could demand the shares within any 30-day period.

[2]       In a brazen attempt to create additional unrestricted shares of COPsync stock, Page repeatedly forged Chaney's and Rapp's signatures on documents sent to various brokerage houses.

after selling the Unrestricted Stock, Page would receive replacement, restricted stock (like all other COPsync shareholders).

33.     Following the closing of the Acquisition Agreement on April 25, 2008, and pursuant to the parties' earlier agreements and course of dealing, Page continued to take the lead role in promoting and raising capital on COPsync's behalf, in part through the sale of the Unrestricted Stock.  As a matter of fact, Page told COPsync shareholders (including Chaney and Rapp) at their first annual shareholders' meeting (held in Texas on September 16, 2008), that he would guide Chaney and Rapp through the process of raising capital for the company and would shepherd Chaney and Rapp's efforts to develop COPsync into a successful company.

C.     **Page's Defalcation and Malfeasance**

34.     Page, however, had no intention of keeping any promises he made to Plaintiffs. Nor did Page intend to uphold his duties as the Plaintiffs' fiduciary.

35.     For example, Page expressly represented to COPsync's shareholders at the September 16 meeting that he would lock up the sale of all COPsync stock under his control until December 16, 2009, in order to maintain COPsync's stock price and allow him sufficient time to raise capital from outside investors.  Ultimately, all shareholders in attendance at the meeting, including Page, agreed to do so based on Page's statements.

36.     Just one month later, however, Page (through the Page Entities) began selling COPsync stock for his own personal benefit.  In fact, the Page Entities sold at least 6,486,070 shares of Unrestricted Stock for a total of $1,738,027.37 between October 23, 2008, and August 14, 2009.  And, on many occasions, Page prepared fraudulent documents authorizing these

transactions on paper made to look like COPsync letterhead and signed as a COPsync officer and/or director.  All of these sales violated Page's agreement and duties as a promoter and fiduciary to COPsync.

37.     Page's relentless selling campaign ultimately caused COPsync's stock price to lose over 90% of its value, which, in turn, severely impaired COPsync's ability to raise capital.  And, contrary to Page's commitment, COPsync never received the proceeds of any such sales.

38.     More striking, perhaps, were Page's attempts to bilk COPsync of millions of shares of stock and millions of dollars of capital.  For instance, Page wrongfully caused 2,375,000 shares of the Cancelled Stock to be re-issued to two entities controlled by Page and his accountant—Beaux Beaux Partnership and Rocky Global Enterprises, Ltd.—and an individual named Asher Zwebner.[3]  These transfers, which were not authorized under the Acquisition Agreement's terms, were never approved by COPsync's board of directors.  Nor did COPsync receive consideration for the Cancelled Stock re-issued to these persons and/or entities.  Upon information and belief, Page personally benefited from these transactions and ultimately obtained control over these shares.

39.     Similarly, on information and belief, in October of 2008, Page caused 450,000 shares of restricted COPsync stock to be issued to Finsuisse S.A., Paola Vaccari, Giovandardi Andrea, and Maldacea Valter for approximately $180,000.00.  As with the transfer of the Cancelled Stock, COPsync's board of directors never authorized this issuance of restricted stock

---

[3]     At least one million of these fraudulently issued shares were eventually transferred to Neostox—an entity directly controlled by Page—on or around August 7, 2009.

and never received the proceeds from such sales.  Upon information and belief, Page secretly profited from the sale of these shares.

40.     Around the same time, Page transferred 200,000 shares of the Unrestricted Stock to the same entities and/or persons for approximately $100,000.00.   Yet again, COPsync never received the proceeds from these sales of the Unrestricted Stock as promised by Page.  Upon information and belief, Page secretly profited from the sale of these shares.

41.     Among other securities law violations, Page also engaged in short-swing transactions specifically prohibited under Section 16(b) of the Exchange Act.  Notably, the SEC has brought two other actions against Page for his involvement in similar schemes.

## VI.     COUNT 1 – Violation of Section 16(b) of the Exchange Act

42.     Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

43.     At all relevant times, Page, directly or indirectly, through contract, arrangement, understanding, relationship, or otherwise, maintained or shared voting and/or investment power over ten percent or more of COPsync's stock (including warrants and convertible notes exercisable within 60 days).

44.     Specifically, Page maintained or shared the power to vote, direct the voting of, dispose, and/or direct the disposition of all COPsync stock held by the Page Entities. Consequently, Page was a beneficial owner of ten percent or more of COPsync stock at all times relevant to this Complaint.

45.    Page caused the Page Entities to purchase and sell COPsync stock within periods of less than six months.  For example, in a series of transactions from February 5, 2009, to May 27, 2009, Page (through the Page Entities, excluding ULA Tech) purchased approximately 880,435 shares for a total price of $219,902.12.  From October 23, 2008, to July 10, 2009, Page and the Page Entities sold approximately 880,435 shares for a total price of $402,794.99, resulting in a total profit of $182,892.87.

46.    Similarly, between March 10, 2009, and April 7, 2009, Page caused ULA Tech to purchase a total of $107,000.00 of COPsync stock.  Between May 4, 2009, and August 11, 2009, Page then caused ULA Tech to sell those shares for approximately $201,750.00, resulting in a total profit of $94,750.

47.    Pursuant to Section 16(b) of the Exchange Act, COPsync is entitled to recover any and all profits resulting from Page's short-swing transactions.  15 U.S.C. §78p(b).

## VII.    COUNT 2 – Breach of Fiduciary Duty

48.    Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

49.    Page owed fiduciary duties to COPsync and its investors.  Page, as COPsync's promoter, assumed a special role and confidential relationship with respect to COPsync and its initial shareholders.  In the context of that relationship, COPsync and its initial shareholders, to Page's knowledge, reposed trust and confidence in Page.  Additionally, Page owned and/or controlled a substantial amount of COPsync stock and exercised control over many aspects of COPsync's business.

50.     The relationship between the parties was such as to be recognized as fiduciary in nature under Texas law, both as COPsync's promoter and a controlling shareholder.  As a result, Page owed fiduciary duties to COPsync, Chaney, and Rapp, including the duties of undivided loyalty, utmost good faith and fair dealing, scrupulous honesty, and the duty to make full disclosure to the Plaintiffs concerning matters affecting their property.  Page also had a duty to refrain from using the relationship to benefit his own interests, except with the full knowledge and consent of the Plaintiffs.

51.     Page breached his fiduciary duties to COPsync by, *inter alia*:

　　a.     Secretly profiting from the purchase of GADV by causing GADV to execute the November 2007 loan agreement in favor of Testre;

　　b.     Failing to obtain authorization, fraudulently representing that he had obtained authorization, and misrepresenting the nature of sales made of Unrestricted Stock entrusted to Page as a promoter and fiduciary;

　　c.     Forging corporate documents purporting to authorize various transactions on paper made to resemble COPsync letterhead;

　　d.     Looting and misappropriating, for his own personal benefit, proceeds from the sale of fraudulently issued stock and Unrestricted Stock;

　　e.     Causing restricted COPsync stock to be issued to various persons and entities without the authorization of COPsync's board of directors; and

　　f.     Engaging in unauthorized, wrongful, and repeated sales of COPsync stock in the open market that severely depressed the price of COPsync stock.

52.     Additionally, Page breached his fiduciary duties to Chaney and Rapp, in their capacity as shareholders, by *inter alia*, representing that he would refrain from selling COPsync stock until December 16, 2009, and then engaging in extensive sales of COPsync stock.

53.     As a direct, foreseeable, and proximate result of Page's fiduciary breaches, Plaintiffs suffered substantial damages, including but not limited to: (i) lost profits, sales, and opportunities that properly belonged to Plaintiffs; (ii) substantial depreciation of COPsync's stock price; and (iii) an impaired ability to raise capital from other investors.  Plaintiffs seek to recover these damages, as well as any and all secret profits obtained by Defendants.

## VIII.   COUNT 3 – Common Law Fraud

54.     Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

55.     As specified above, Page represented to COPsync and its investors that he would sell the Unrestricted Stock for the sole purpose of raising capital for COPsync and that he would refrain from selling COPsync stock for personal gain until December 16, 2009.

56.     At the time Page made the foregoing representations and omissions, Page knew full well that they were false.  Specifically, Page knew that he would:

        a.      Begin selling COPsync stock on the open market immediately;

        b.      Sell a majority of the Unrestricted Stock for his own profit; and

        c.      Retain the proceeds from the sales of the Unrestricted Stock for himself.

57.     Page made the foregoing representations with the intent that the Plaintiffs act in reliance on such representations.

58.     Furthermore, COPsync justifiably relied on Page's promises in issuing the Unrestricted Stock to Page.  Specifically, Chaney and Rapp lacked the experience and contacts necessary to guide COPsync through the process of going public and raising sufficient capital. Consequently, they hired Page and relied upon Page's experience and guidance in agreeing to issue the Unrestricted Stock for that purpose.

59.     Likewise, Chaney and Rapp, as COPsync shareholders, justifiably relied on Page's promise to refrain from selling COPsync stock until December 16, 2009.  As with COPsync's other shareholders, Chaney and Rapp relied on Page's prior experience to guide their actions and ensure COPsync's success.

60.     The misrepresentations made by Page were material insofar as COPsync issued the Unrestricted Stock to Page solely based upon his representation that COPsync would receive all proceeds related to the sale of such stock.  Similarly, Chaney and Rapp, as with the other COPsync investors, agreed to lock up their shares based upon Page's representation and assent that doing so was in the best interest of COPsync and that he would also lock up his shares.

61.     In making these misrepresentations, Page acted so as to deceive and defraud the Plaintiffs.  Accordingly, Page's conduct arose to the level of common law fraud.

62.     Page's fraudulent conduct directly and proximately injured Plaintiffs by, *inter alia*, depressing COPsync's stock price, impairing COPsync's ability to raise capital from potential investors, and depriving COPsync of proceeds from the sale of the Unrestricted Stock.

## IX.   COUNT 4 – Constructive Fraud

**63.**   Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

**64.**   Page, as discussed above, owed fiduciary duties to COPsync, Chaney, and Rapp. Page's fiduciary breaches also constitute constructive fraud.

**65.**   Page both breached his fiduciary duties and engaged in fraudulent conduct by:

    a.    Secretly profiting from the purchase of GADV by causing GADV to execute the November 2007 loan agreement in favor of Testre;

    b.    Failing to obtain authorization, fraudulently representing that he had obtained authorization, and misrepresenting the nature of sales made of Unrestricted Stock entrusted to Page as a promoter and fiduciary;

    c.    Forging corporate documents purporting to authorize various transactions on paper made to resemble COPsync letterhead;

    d.    Looting and misappropriating, for his own personal benefit, proceeds from the sale of fraudulently issued stock and Unrestricted Stock;

    e.    Causing restricted COPsync stock to be issued to various persons and entities without the authorization of COPsync's board of directors; and

    f.    Engaging in unauthorized, wrongful, and repeated sales of COPsync stock in the open market that severely depressed the price of COPsync stock.

**66.**   In making the misrepresentations, Page acted so as to deceive and defraud the Plaintiffs. Accordingly, his conduct rose to the level of constructive fraud.

67.    Page's fraudulent and deceitful conduct directly and proximately resulted in damages to Plaintiffs, including (i) lost profits, sales, and opportunities which properly belonged to Plaintiffs; (ii) the depreciation of COPsync's stock price; and (iii) an impaired ability to raise capital from other investors.

## X.    COUNT 5 – Conversion

68.    Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

69.    Page wrongfully took and deprived COPsync of lawful possession to 2,375,000 shares of Cancelled Stock, and 450,000 shares of restricted COPsync stock (the "Unauthorized Stock"). The Unauthorized Stock was converted without COPsync's knowledge or consent.

70.    Further, Page wrongfully took and deprived COPsync of the proceeds derived from Defendants sale of the Unauthorized Stock and Unrestricted Stock (the "Converted Proceeds"). The Converted Proceeds were delivered to Page for safekeeping, intended to be kept segregated, and not subject to any claims by Page.   These proceeds were converted without COPsync's knowledge or consent.

71.    At the time of the conversion, COPsync was the lawful owner of the Unauthorized Stock and the Converted Proceeds.  Defendants, conversely, had absolutely no right or title to, or interest in, the Unauthorized Stock or the Converted Proceeds, and has wholly failed to compensate COPsync for the Unauthorized Stock and Converted Proceeds.

72.    Defendants' wrongful conversion harmed COPsync by increasing the number of outstanding COPsync shares and depriving COPsync of monies to which it is rightfully entitled.

## XI.    COUNT 6 – Money Had & Received

**73.**    Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

**74.**    Defendants currently hold proceeds arising from the sale of the Unauthorized Stock and Unrestricted Stock.

**75.**    COPsync has an ownership interest in the proceeds arising from all such sales. Moreover, those proceeds belong to COPsync in equity and good conscience.

**76.**    Consequently, COPsync is entitled to recover all such proceeds from Defendants.

## XII.    COUNT 7 – Breach of Implied Contract

**77.**    Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

**78.**    In November of 2007, COPsync and Page entered into a valid and enforceable oral contract.  By this contract, the parties agreed that COPsync would issue the Unrestricted Stock to the Page Entities and Page would serve as COPsync's promoter and utilize the Unrestricted Stock *only* to raise capital for COPsync.

**79.**    COPsync fully performed its contractual obligations and issued the Unrestricted Stock to Page.  All conditions precedent have been performed by COPsync or have occurred.

**80.**    Page and the Page Entities breached the contract by selling the Unrestricted Stock and absconding with the proceeds for their own benefit.

81.     As a direct, foreseeable, and proximate result of Defendants' breach, COPsync suffered substantial damages, including but not limited to, lost profits derived from the sale of the Unrestricted Stock.

82.     COPsync is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code chapter 38 because this is a suit for breach of an oral contract.

### XIII.   COUNT 8 – Unjust Enrichment

83.     Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

84.     Defendants have been unjustly enriched by and from their tortious and fraudulent conduct.

85.     Plaintiffs have suffered and continue to suffer substantial damages as a result of Defendants' conduct, and Defendants have acquired substantial profits at Plaintiffs' expense to which they are not entitled.  Accordingly, Plaintiffs are entitled to recover the amount by which Defendants have been unjustly enriched, including Defendants' profits or other compensation.

### XIV.   EXEMPLARY DAMAGES

86.     Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

87.     Defendants' wrongful conduct described above constitutes fraud, malice, willful acts or omissions, and/or gross negligence, entitling Plaintiffs to punitive damages under Texas Practice & Remedies Code § 41.003.  Therefore, Plaintiffs seek punitive or exemplary damages from Defendants, jointly and severally.

## XV.   EQUITABLE RELIEF

**88.** Plaintiffs incorporate by reference all of the allegations in each of the paragraphs above, as if fully set forth herein.

**89.** In addition or in the alternative to the damages sought herein, Plaintiffs plead that the monies and COPsync stock wrongfully obtained by Defendants are and remain in the State of Texas.  Plaintiffs request that this Court impose for Plaintiffs' benefit a constructive trust over this property, together with all earnings and other value received by Defendants by virtue of its use of those funds and COPsync stock.

**90.** Furthermore, due to the Defendants' fraudulent and deceitful conduct, Plaintiffs request that the Court cancel, invalidate, and/or rescind any and all outstanding warrants, convertible notes, loan agreements, and/or COPsync stock to which Defendants claim any right or title.

## XVI.   PRAYER FOR RELIEF

For all of the foregoing reasons, Plaintiffs respectfully pray that, after a jury trial, the Court award judgment in favor of Plaintiffs and against Defendants, jointly and severally, for the following relief, collectively, or in the alternative:

      a.    Preliminary and permanent injunctive relief enjoining Defendants, their agents, representatives, and all persons acting in concert with them, from further selling any portion of COPsync stock held by Defendants;

b.      Preliminary and permanent injunctive relief enjoining Defendants from transferring any proceeds in brokerage accounts controlled by Defendants in which COPsync stock has been purchased and or sold;

c.      The imposition of a constructive trust for Plaintiffs' benefit on, and an award returning, the monies and COPsync stock wrongfully obtained by Defendants;

d.      A declaratory judgment cancelling, invalidating, and/or rescinding any and all outstanding warrants, convertible notes, loan agreements, and/or COPsync stock to which Defendants claim any right or title;

e.      An award equal to the short-swing profits to which Plaintiffs are entitled pursuant to Section 16(b) of the Securities Exchange Act of 1934;

f.      An award equal to the damages sustained by Plaintiffs as a result of Page's breach of contract and Defendants' tortious acts, including consequential damages flowing from Defendants' actions and inactions;

g.      An award of exemplary damages for Defendants' conversion of COPsync stock and proceeds relating to the sale of COPsync stock that rightfully belong to COPsync;

h.      An award of exemplary damages for Defendants' fraudulent conduct with respect to the fraudulent issuance and transfer of COPsync stock;

i.      An award of Plaintiffs' reasonable and necessary attorneys' fees, costs, and expenses pursuant to Texas Civil Practice and Remedies Code §38.001;

j.      Pre-judgment and post-judgment interest to the maximum extent allowed

        by law or equity; and

k.      Such other and further relief at law or in equity to which Plaintiffs may be

        justly entitled.


**Date**: December 4, 2009                          **Respectfully submitted,**

                                                    Lisa S. Tsai
                                                    ➤ Texas Bar No. 24046999
                                                    ➤ ltsai@reiddavis.com
                                                    Nathaniel J. Palmer
                                                    ➤ Texas Bar No. 24065864
                                                    ➤ npalmer@reiddavis.com
                                                    REID DAVIS LLP
                                                    7800 Shoal Creek Boulevard, Suite 210 West
                                                    Austin, Texas 78757
                                                    Telephone:  512.600.2233
                                                    Telecopier:  512.367.5690

                                                    Attorneys for Plaintiffs,
                                                    COPSYNC, INC.,
                                                    RUSSELL CHANEY, individually, and
                                                    JASON S. RAPP, individually